Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Scott Alan Burroughs (SBN 235718)
scott@donigerlawfirm.com
Trevor W. Barrett (SBN 287174)
tbarrett@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Osho International Foundation, a Swiss Corporation,

Plaintiff,

v.

Chapman Way, an individual; Maclain Way, an individual, Duplass Brothers, Inc., a California Corporation; Netflix, Inc., a Delaware Corporation; Red Rancho Film Productions, LLC, a California Limited Liability Company; Stardust Frames Productions, a California business entity of form unknown; Submarine Entertainment, LLC, a New York Limited Liability Company; Rock Paper Scissors, LLC, a California Limited Liability Company; Gannett Co., Inc., a Delaware Corporation and Gannett Satellite Information Network, LLC, a Delaware Limited Liability Company, individually and d/b/a "USA Today"; Newsweek, LLC, a New York Limited Liability Company; The Daily Beast Company, LLC, a Delaware Limited Liability Company and IAC/InterActiveCorp,

Case No.:

**Plaintiff's Complaint for**:

1. Copyright Infringement;

2. Vicarious and/or Contributory Copyright Infringement;

3. Violation of the Digital Millennium Copyright Act (17 U.S.C. §1202)

**Jury Trial Demanded**

a Delaware Corporation, individually and d/b/a "The Daily Beast"; The New York Times Company, a New York Corporation; Insider, Inc., a Delaware Corporation, individually and d/b/a "Business Insider" and "This Insider"; Conde Nast, Inc., a New York Corporation individually and d/b/a "GQ," "Vogue," and "Vanity Fair"; Refinery 29 Inc., a Delaware Corporation; Penske Media Corporation, a Delaware Corporation, individually and d/b/a "Deadline," "Rolling Stone," and "Indiewire"; Hearst Communications, Inc., a Delaware Corporation, individually and d/b/a "Elle" and "Esquire"; Vice Media LLC, a Delaware Limited Liability Company; BuzzFeed Inc., a Delaware Corporation; Popsugar Inc., a California Corporation; The Atlantic Monthly Group, LLC, a District of Columbia Limited Liability Company; Ebert Digital LLC, a Delaware Limited Liability Company; Meredith Corporation, an Iowa Corporation, individually and d/b/a "People"; Time USA, LLC, a Delaware Limited Liability Company; Vox Media, Inc., a Delaware Corporation, and New York Media, LLC, a Delaware Limited Liability Company, individually and d/b/a "Vulture" and "The Verge"; and Does 1-10,

Defendants.

Plaintiff Osho International Foundation ("OIF"), by and through its undersigned counsel, hereby alleges and prays for relief as follows:

### Introduction

Netflix's award-winning documentary Wild Wild Country ("WWC") is little more than a repackaging of content purloined from other authors and filmmakers. The main creative contribution of Chapman and Maclain Way, the "directors" of WWC, is a series of generically filmed interview sequences of a type that are so rote and cliched that in the world of documentary filmmaking they are referred to as "talking-head footage." And, even then, the talking-head footage created by the Ways pales in comparison (and importance) to the third-party footage that the Ways copied from the internet, previously published books, and elsewhere. This misappropriated third-party content is what drives and provides substance and emotion to WWC, and is what critics have singled out as the most compelling part of the project. Indeed, even Netflix's own publicity campaign for WWC focuses not on the Ways' talking-head footage but on OIF's photographs and material. Without OIF's footage, WWC would have little to no value or appeal to the public.

There is currently pending an action between OIF and the Defendants to this action, captioned *Osho International Foundation v. Chapman Way*, 2:19-cv-00753-RSWL-JEM ("First Action"). The First Action alleges copying of a massive number OIF Works, which content comprises at least 30 minutes of WWC's running time, and most of the contemporaneously filmed in WWC.

Incredibly, OIFs investigation has revealed Defendants went even further than

what is claimed in the First Action. OIF's investigation has revealed that numerous

additional OIF works were copied and exploited in WWC without consent. This

action is brought to address the unauthorized copying of these additional works and

the full scope of infringement committed in connection with WWC.

## Jurisdiction & Venue

1.     This action arises under the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.*

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331,

1338(a) and (b), & 1367(a).

3.     Venue in this judicial district is proper under 28 U.S.C. § 1391 (c) and §

1400(a).

## The Parties

4.     Plaintiff OIF is a Swiss corporation.

5.     OIF is informed and believes, and thereon alleges, that Defendant Chapman

Way is an individual residing in Los Angeles, California.

6.     OIF is informed and believes, and thereon alleges, that Defendant Maclain Way

is an individual residing in Thousand Oaks, California.

7.     OIF is informed and believes, and thereon alleges, that Defendant Netflix, Inc.

("Netflix") is a Delaware corporation with its principal place of business located in the

State of California and is doing business in and with the State of California.

8.     OIF is informed and believes, and thereon alleges, that Defendant Red Rancho

Film Productions, LLC ("Red Rancho") is California limited liability company with its principal place of business located in the State of California.

9.    OIF is informed and believes, and thereon alleges, that Defendant Duplass Brothers, Inc. ("Duplass") is California corporation with its principal place of business located in the State of California.

10.   OIF is informed and believes, and thereon alleges, that Defendant Stardust Frames Productions ("Stardust") is a California business entity of form unknown with its principal place of business located in California.

11.   OIF is informed and believes, and thereon alleges, that Defendant Submarine Entertainment, LLC ("Submarine") is a New York limited liability company doing business in and with the State of  California, including in connection with the project at issue.

12.   OIF is informed and believes, and thereon alleges that Defendant Rock Paper Scissors, LLC ("RPS") is a California limited liability company with is principal place of business located in the State of California.

13.   OIF is informed and believes, and thereon alleges, that Defendants Gannett Co., Inc., and Gannett Satellite Information Network, LLC, which do business as "USA Today" (collectively "USA Today") and which operate the website "www.usatoday.com", are a Delaware corporation and a Delaware limited liability company respectively, doing business in and with the State of California.

14.   OIF is informed and believes, and thereon alleges, that Defendant Newsweek, LLC, ("Newsweek") which operates the website "www.newsweek.com", is a New York limited liability company doing business in and with the State of California.

15.   OIF is informed and believes, and thereon alleges, that Defendants The Daily Beast, LLC and IAC/InterActiveCorp, which do business as "The Daily Beast" and operate the website "www.thedailybeast.com" (collectively "The Daily Beast"), are a Delaware corporation and a Delaware limited liability company respectively, doing business in and with the State of California.

16.   OIF is informed and believes, and thereon alleges, that Defendant The New York Times Company "New York Times"), which operates the website "www.nytimes.com", is a New York corporation doing business in and with State of California.

17.   OIF is informed and believes, and thereon alleges, that Defendant Insider Inc., which does business as "Business Insider" and "This Insider" and operates the website "www.businessinsider.com" (collectively "Business Insider"), is a Delaware corporation doing business in and with the State of California.

18.   OIF is informed and believes, and thereon alleges, that Defendant Conde Nast, Inc., which does business as "GQ," "Vogue," and "Vanity Fair" and operates the websites "www.gq.com", "www.vogue.com", and "www.vanityfair.com" (collectively "Conde Nast"), is a New York corporation doing business in and with the

State of California.

19.   OIF is informed and believes, and thereon alleges, that Defendant Refinery 29 Inc., which operates the website "www.refinery29.com" ("Refinery29"), is a Delaware corporation doing business in and with the State of California.

20.   OIF is informed and believes, and thereon alleges, that Defendant Penske Media Corporation, individually and doing business as "Deadline," "Rolling Stone" and "Indiewire," (collectively "Penske") and which operates the websites "www.deadline.com", "www.rollingstone.com", and "www.indiewire.com", is a Delaware corporation doing business in and with the State of California.

21.   OIF is informed and believes, and thereon alleges, that Defendant Hearst Communications Inc., which does business as "Elle" and "Esquire" (collectively "Hearst") and operates the websites "www.elle.com", and "www.esquire.com, is a Delaware corporation doing business in and with the State of California.

22.   OIF is informed and believes, and thereon alleges, that Defendant Vice Media LLC, ("Vice") which operates the website "www.vice.com", is a Delaware limited liability company with business locations in the State of California and is  doing business in and with the State of California.

23.   OIF is informed and believes, and thereon alleges, that Defendant BuzzFeed, Inc. ("BuzzFeed"), which operates the website "www.buzzfeed.com", is a Delaware corporation doing business in and with the State of California.

24.   OIF is informed and believes, and thereon alleges, that Defendant Popsugar Inc., ("Popsugar") which operates the website "www.popsugar.com", is a Delaware corporation with its principal place of business located in California and is doing business in and with the State of California.

25.   OIF is informed and believes, and thereon alleges, that Defendant The Atlantic Monthly Group, LLC, which operates the website "www.theatlantic.com" (collectively "The Atlantic"), is a District of Columbia corporation doing business in and with the State of California.

26.   OIF is informed and believes, and thereon alleges, that Defendant Ebert Digital LLC ("Ebert Digital") which operates the website "www.rogerebert.com", is an Delaware limited liability company doing business in and with the State of California.

27.   OIF is informed and believes, and thereon alleges, that Defendant Meredith Corporation, individually and doing business as "People" (collectively, "People")and which operates the website "www.people.com", is an Iowa corporation doing business in and with the State of California.

28.   OIF is informed and believes, and thereon alleges, that Defendant Time USA, LLC ("Time") which operates the website "www.time.com", is a Delaware limited liability company doing business in and with the State of California.

29.   OIF is informed and believes, and thereon alleges, that Defendants Vox Media, Inc., and New York Media, LLC, individually and doing business as "Vulture" and

"The Verge" (collectively, "Vox") and which operate the websites

"www.vulture.com" and "www.theverge.com", are a Delaware corporation and a

Delaware limited liability company respectively, doing business in and with State of

California.

30.   Defendants Does 1 through 10, inclusive, are other parties not yet identified

who have infringed OIF' copyrights, have contributed to the infringement of OIF'

copyrights, or have engaged in one or more of the wrongful practices alleged herein.

The true names, whether corporate, individual or otherwise, of Defendants 1 through

10, inclusive, are presently unknown to OIF, which therefore sue said Defendants by

such fictitious names, and will seek leave to amend this Complaint to show their true

names and capacities when same have been ascertained.

31.   OIF is informed and believes and thereon alleges that at all times relevant

hereto each of the Defendants was the agent, affiliate, officer, director, manager,

principal, alter-ego, and/or employee of the remaining Defendants and was at all times

acting within the scope of such agency, affiliation, alter-ego relationship and/or

employment; and actively participated in or subsequently ratified and adopted, or

both, each and all of the acts or conduct alleged, with full knowledge of all the facts

and circumstances, including, but not limited to, full knowledge of each and every

violation of OIF' rights and the damages to OIF proximately caused thereby.

**Factual Background**

32.   OIF owns the copyrights in certain films, books, and other content as identified herein ("OIF Works"). OIF also owns the copyrights in certain photographs ("OIF Photographs") that are contained in its books and archives. These works have been registered with the U.S. Copyright Office or were first published abroad and thus exempt from the registration requirement.

33.   The OIF Works were widely screened and available for viewing, purchase, and streaming, including via VHS tape and DVD/optical disc, or via internet and streaming distribution platforms. The OIF Photographs were available for viewing in books, publications, and online.

34.   The First Action addresses many of OIF's claims against Defendants, but Plaintiff was unable to make claims in that action regarding additional footage and content in which it owns the copyrights because the Copyright Office had not yet issued registration certificates for the additional footage. And OIF's investigation has revealed that the universe of infringement is even vaster than previously understood.

35.   The Copyright Office has now registered OIF's additional footage and content. In addition to the infringement and misappropriation alleged in the First Action, Defendants, and each of them, have exploited in WWC without consent the following works, the copyrights for which are owned by OIF:

     a.     From Sex to Superconsciousness (Reg. No. TX 1-092-174)

b.    Enlightenment the Only Revolution (Reg. No. TX 4-671-722)

c.    Shree Rajneesh Ashram: This Commune, The Buddhafield (Extended) (Reg. No. PA 2-202-878)

d.    The One Who is Here – Satsang (Reg. No. PA 2-202-117)

e.    Osho Zen Tarot – The Transcendental Game of Zen (Reg. No. TX 4-674-679)

f.     Relax and Let God Possess You (Reg. No. PA 2-169-498)

g.    Images of Osho Photo Collection Database (Reg. No. TX-5-162-557)

36.  The OIF Photographs include the following, each of which is exploited without consent in WWC[1]:

| From Sex to Super Consciousness |  |
| --- | --- |

---

[1] These examples are not meant to be inclusive of all OIF Photographs exploited without consent in WWC.

**Enlightenment
the Only
Revolution**

 

**Images of Osho**
**TX-5-162-557**







**Osho Zen Tarot**



37. Defendants Chapman Way, Maclain Way, Netflix, Duplass, and Red Rancho, Submarine, Stardust, and each of them, have infringed and continue to infringe OIF's rights in the OIF Works by (and without OIF' consent) producing, distributing, marketing, selling, and streaming the six-episode series, WWC.

38. Defendants appropriated without authorization substantial portions of OIF' copyrighted works throughout duration of WWC (such portions referred to herein as "appropriated footage"). For instance, the first episode of the series alone includes roughly 88 discrete instances of appropriation, covering a total duration of at least over 12 minutes, or roughly a quarter of the episode's total duration. In sum, Defendants, and each of them, copied **at least fifty-six** (56) OIF Works and incorporated said works without consent into WWC and its marketing materials and

then reproduced, distributed, displayed, and broadcast WWC in violation of Plaintiff's rights.

39. The OIF Photographs include, without limitation, the following:





40. Certain of the Defendants infringed OIF's copyrights in the OIF Photographs by reproducing, distributing, and publishing without permission the OIF Photographs, including without limitation on their servers and web sites. These unauthorized

publications each constitute separate violations of OIF's copyrights and include

without limitation the following:







Netflix

 







## USA Today

Home    Parenting    Food and Dining    Life

Advertisement

(pictured).
NETFLIX

In "Wild Wild Country," Netflix examined the controversial Oregon commune
of Indian guru Bhagwan Shree Rajneesh and its effects on the surrounding
community. The six-part documentary was released in 2018.
NETFLIX

## Newsweek

apparently depicted inaccurately, including what life was really like on the settlement.



"Wild Wild Country" is Netflix's docuseries about a Oregon-based sex cult, pictured. The six-part show makes reference
to Jonestown, a controversial cult that had more than 900 of its members die in a mass suicide.
NETFLIX

**Newsweek**    IS 'WILD WILD COUNTRY' REAL? TRUE STORY ABOUT 'SEX CULT' IN OREGON | CULTURE

accused of attempted murder, wiretapping, poising hundreds of people and many more crimes. It's unclear, however, if she were acting on her own accord or under the orders of her guru?



More than 7,000 people lived on the commune in Rajneeshpuram, as documented in 2018 Netflix documentary "Wild Wild Country."

NETFLIX

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Daily Beast

## Inside the Crazy Sex Cult That Invaded Oregon

The new Netflix docuseries 'Wild Wild Country' tells the true story of Bhagwan Shree Rajneesh, a guru who sought to create a metropolis in rural Oregon by any means necessary.

Nick Schager  |  Updated 03.12.18 5:56AM ET / Published 03.12.18 5:30AM ET

Netflix

New York Times

𝕿|**Watching**



Bhagwan Rajneesh in "Wild Wild Country."  Netflix

TV SHOW

**Wild Wild Country**

Business Insider

BUSINESS INSIDER

Search BI and the web using Microsoft Bing

TECH | FINANCE | POLITICS | STRATEGY | LIFE | BI PRIME | INTELLIG

### Rajneesh movement — "Wild Wild Country"



Netflix

BUSINESS INSIDER

Search BI and the web using Microsoft Bing

TECH | FINANCE | POLITICS | STRATEGY | LIFE | BI PRIME | INTELLIG

all on this path walking toward enlightenment — now we are kind of becoming a homeless shelter," which was really interesting as interviewers.



Bhagwan Shree Rajneesh presides over devotees  Netflix



## Vanity Fair



Refinery 29

# The Summer Of Cults I
# Frighten & Intrigu

MORGAN BAILA
LAST UPDATED AUGUST 3, 2018, 7:00 AM

  



PHOTO: COURTESY OF NETFLIX.

We use the word
things: the cult of
personality, the c
even the cult of T
describe a collect
something, like f
movies that bom!
second life (see: 1
conversation aro
summer, we're ta

Welcome to Cult

Over the next few
talking anything
they all wear one
actual Kool-Aid v
really bringing us



Deadline

**DEADLINE**   ☰ MENU   **READ NEXT:** Governors Awards: The Season's First Os...

peaceful, meditative, Indian, Eastern philosophy group and what forced them in America to arm up with AK-47s and take over political control of a town. What led them to the poisoning of 750 people? For us it was more of a sociopolitical investigation and less of a true crime investigation."

Netflix

IndieWire

**Indie**Wire   News+  Film+  TV+  Awards+  Toolkit+

## 'Wild Wild Country' FAQ: Everything You Need to Know About Bhagwan Shree Rajneesh, the Oregon-Based Cult Leader

BRAND CONTENT

All six episodes of the Netflix docuseries are now streaming.

Indiewire Staff
Apr 2, 2018 12:00 pm

"Wild Wild Country"
Netflix

25
COMPLAINT

## Rolling Stone

*Rolling Stone*    ☰ Menu    *Read Next*  **RS Charts: Post Malone Has the Number One Album Again**

**Thurston Moore: 5 Songs That Influenced Me Early On**

**35 Greatest Horror Soundtracks: Modern Masters, Gatekeepers Choose**

confessions – but it starts with gruesome death, sexual assault and the politics of small-town America. *Wild Wild Country*, about an Indian guru and his followers who attempted to build their own city in Oregon, concerns itself with prejudice and the othering of foreigners. It's also filled with orgies, drugs, guns, bombs and massive amounts of money – a true-crime bingo card with very few spaces left blank.



*Rolling Stone*    ☰ Menu    *Read Next*  **Tim Montana's 'Mostly Stoned' Video Is Weird AF**



Elle

☰   ELLE   FASHION   BEAUTY   CULTURE   LIFE & LOVE   HOROSCOPES

plagued the family throughout their time there.



NETFLIX

Esquire

☰   *Esquire*   Style   Entertainment   Politics   News   Food & Drink

# A Rajneeshee from *Wild Wild Country*



Netflix









## Time



Patrick Melrose- Official Trailer

*Watch it now*

**Wild Wild Country, Netflix**



A still from the Netflix docuseries 'Wild Wild Country'   Netflix

## Vulture

 **VULTURE**

MAR. 16, 2018

*Wild Wild Country* May Be the Craziest Series Yo
All Year
By Jen Chaney  🐦 @chaneyj



The Bhagwan and his followers. Photo: Netflix

The Verge

SCIENCE \ ENTERTAINMENT \ TV SHOWS

**Here's what Netflix's Wild Wild Country doesn't explain about cult leaders**

*An expert discusses how they seduce and control their followers*

By Alessandra Potenza | @ale_potenza | Apr 25, 2018, 6:38pm EDT

SHARE

Cult leader Bhagwan Shree Rajneesh and his followers in India. | Photo: Netflix

41.   The OIF works referenced hereinabove were reproduced in WWC without Plaintiff's consent and were displayed, broadcast, streamed, published, and/or distributed to third-parties and the public without Plaintiff's consent.

42.   OIF is informed and believes, and thereupon alleges, that WWC has been a commercial success for Defendants, including as a means of driving revenues, awareness, and subscriber growth for Netflix and the other Defendants.

43.   OIF is informed and believes, and now allege, that Defendants yielded substantial revenue from their production, distribution, and streaming of "Wild Wild

Country," including by way of subscriber payments and licensing and production and performance and carriage fees.

44.   OIF is informed and believes, and now allege that Defendants' conduct was willful, given the substantial breadth of Defendants' infringement, the lack of obtainment of a license or other transfer, and the continued exploitation of Plaintiff's work after notice that Plaintiff owned the work and objected to is exploitation without consent.

45.   OIF met and conferred with Maclain Way and Chapman Way in 2015 regarding a potential license for certain Osho International content. No such license was consummated.

46.   OIF notified Defendants of their allegations of infringement in February of 2018 and the parties communicated in regard to this dispute. Defendants, despite notice of OIF' claims, failed to meaningfully respond and Netflix moved forward with the unauthorized use and continues to this day to broadcast, stream, display, and distribute WWC.

## First Claim for Relief

*(For Copyright Infringement–Against all Defendants, and Each)*

47.    OIF repeat, re-allege, and incorporate by reference all preceding paragraphs of this Complaint.

48.   OIF is informed and believes and now allege that Defendants, and each of them,

had access to OIF' copyrighted films through VHS tape, DVD, books, the internet, or online streaming platforms. Additionally, access is also established by the striking similarity (they are identical or virtually identical) of the infringing material.

49.   OIF is informed and alleges that Defendants, and each of them, reproduced, published, distributed, displayed, and broadcast OIF's copyrighted works, including without limitation the OIF Photographs and the OIF works identified in the First Action, without OIF's consent and in violation of OIF's copyrights.

50.   OIF is informed and believes and now allege that, without OIF' authorization, Defendants, and each of them, distributed, marketed, and published WWC bearing appropriated footage and content that is identical to, or substantially similar to, excerpts from or complete copies of OIF' works.

51.    OIF is informed and believes and thereon allege that Defendants, and each of them, infringed OIF' copyrights by creating WWC and then marketing, distributing, and publishing it to the public.

52.    Defendants, and each of them, infringed OIF's rights by extracting footage from OIF's works, incorporating the appropriated works in new and different combinations into WWC and then publishing it without OIF's authorization or consent. OIF's copyrighted material provides the most compelling portions in WWC.

53.   Certain Defendants copied, reproduced, uploaded, distributed, displayed, and/or published OIF Photographs online without the consent of OIF.

54.    Due to Defendants', and each of their, acts of infringement, OIF has suffered actual, general and special damages in an amount to be established at trial, including but not limited a reasonable license fee for Defendants' use of the works.

55.    Due to Defendants' acts of copyright infringement as alleged herein, Defendants, and each of them, have obtained direct and indirect profits they would not otherwise have realized but for their infringement of OIF's rights in OIF's copyrighted works. As such, OIF is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringements of their rights in the works in an amount to be established at trial.

56.    OIF is informed and believes and now allege that Defendants, and each of their, conduct as alleged herein was willful, reckless, and/or with knowledge, subjecting Defendants, and each of them, to enhanced statutory damages, claims for costs and attorneys' fees, and/or a preclusion from deducting certain costs when calculating disgorgeable profits.

## **Second Claim for Relief**

*(For Vicarious and/or Contributory Copyright Infringement–Against all Defendants, and Each)*

57.    OIF repeat, re-allege, and incorporate by reference all preceding paragraphs of this Complaint.

58.    OIF is informed and believes and now allege that Defendants knowingly

induced, participated in, aided and abetted in and profited from the illegal reproduction, distribution, and publication of WWC as alleged above. Specifically, the producers of the film (Netflix, Duplass, and/or Red Rancho) underwrote and participated in Ways' illegal copying during the creation of WWC and ensured the distribution of WWC. Defendants, and each of them, realized profits through their respective obtainment, distribution, and publication of the WWC.

59. OIF is informed and believes and now allege that Defendants, and each of them, are vicariously liable for the infringement alleged herein because they had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct. Specifically, each Defendant in the involved in the infringement had the ability to oversee the publication and distribution of the Infringing Scenes. And, Defendants, and each of them, realized profits through their respective obtainment, distribution, and publication of the WWC featuring the appropriated works.

60. On information and belief it is alleged that one of more of the Defendants provided and distributed to other Defendants that operate websites copies of the OIF Photographs with knowledge that said photographs would be published online. Said photographs were then published online, in violation of OIF's rights.

61. On information and belief it is alleged that the Defendant(s) that were responsible for providing and distributing the OIF Photographs to the Defendants that

operate web sites did so with knowledge that they did not have authorization to publish the OIF Photographs and had the right and ability to control that distribution and derived a financial benefit from that distribution.

62.   By reason of Defendants', and each of their, acts of contributory and vicarious infringement as alleged above, OIF have suffered and will continue to suffer substantial damages to their businesses in an amount to be established at trial, as well as additional actual, general and special damages in an amount to be established at trial.

63.   Due to Defendants' acts of copyright infringement as alleged herein, Defendants, and each of them, have obtained direct and indirect profits they would not otherwise have realized but for their infringement of OIF's rights in. As such, OIF is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of OIF's rights in their copyrighted works in an amount to be established at trial.

64.   OIF is informed and believes and now allege that Defendants, and each of their, conduct as alleged herein was willful, reckless, and/or with knowledge, subjecting Defendants, and each of them, to enhanced statutory damages, claims for costs and attorneys' fees, and/or a preclusion from deducting certain costs when calculating disgorgeable profits.

## **Third Claim for Relief**

*(For Violations of the Digital Millennium Copyright Act (17 U.S.C. §1202 – Against all Defendants, and Each))*

65.   Plaintiff repeat, re-allege, and incorporate by reference all preceding paragraphs of this Complaint.

66.   Plaintiff's books, photographs, and films, as distributed in physical format, on VHS, DVD/optical disk, online, and on streaming platforms, contained Content Management Information ("CMI"), including but not limited to the inclusion of their copyright notices, names, titles and other indicia providing notice that they own the copyrights for the works at issue.

67.   Plaintiff is informed and believe and now allege that Defendants, in the course of copying Plaintiff's material and extracting footage from OIF's films and recompiling that footage into WWC, violated 17 U.S.C. §1202 by intentionally removing and/or altering the CMI on the copies made of OIF's footage and photographs.  Defendants then distributing the material with knowledge that OIF's CMI had been removed or altered without authority of the copyright owner or the law.

68.   OIF is informed and believes and now allege that Defendants, and each of them, distributed false CMI in connection with their distribution of WWC, including false CMI identifying Defendants and/or their agents or collaborators as the author and/or owner of certain material that was in fact owned by authored and/or owned by one or

more of the OIF. For example, Defendant Netflix distributed the below OIF

Photograph with the name "Netflix" and the title "Wild Wild Country" stamped

thereupon, and without OIF's CMI, falsely associating OIF's work with Netflix and

WWC:





69.   OIF is informed and believes and now allege that Defendants distributed and

publicly displayed the extracted footage containing mislabeled and/or fraudulent CMI,

knowing that the CMI had been removed or altered without authority of the copyright

owner or the law, and knowing, or, with respect to civil remedies under section 1203,

having reasonable grounds to know, that the conduct would induce, enable, facilitate,

or conceal an infringement of any right under this title.

70.   The above conduct is in violation of the Digital Millennium Copyright Act and exposes Defendants, and each of them, to additional and enhanced common law and statutory damages, attorneys' fees, and penalties pursuant to 17 USC § 1203 and other applicable law.

71.   OIF is informed and believes and now allege that Defendants, and each of their, conduct as alleged herein was willful, reckless, and/or with knowledge, and OIF resultantly seek enhanced damage and penalties.

## **Prayer for Relief**

### *(Against All Defendants)*

With Respect to Each Claim for Relief, OIF demand judgment against Defendants as follows:

a.  That Defendants, their affiliates, agents, and employees be enjoined from infringing OIF' copyrights in and to OIF' copyrighted      works;

b.   Granting an injunction permanently restraining and enjoining Defendants, their officers, agents, employees, and attorneys, and all those persons or entities in active concert or participation with them, or any of them, from further infringing Plaintiff's copyrights in and to OIF's copyrighted works;

c.   For a constructive trust to be entered over any scenes, recordings, reproductions, files, online programs, and other material in connection

with WWC and all revenues resulting from the exploitation of same, for the benefit of OIF;

d.      That OIF be awarded all profits of Defendants, and each, plus all losses of Plaintiff, plus any other monetary advantage gained by the Defendants through their infringement, the exact sum to be proven at the time of trial;

e.      That Defendants pay damages equal to OIF's actual damages and lost profits;

f.      That OIF be awarded statutory damages and attorneys' fees as available under 17 U.S.C. § 505 and 17 U.S.C. § 1203;

g.  That OIF be awarded pre-judgment interest as allowed by law;

h.  That OIF be awarded the costs of this action; and

i.  That OIF be awarded such further legal and equitable relief as the Court deems proper.

**Plaintiff demands a jury trial on all issues so triable pursuant to Fed. R. Civ. P. 38 and the 7th Amendment to the United States Constitution.**

Respectfully submitted,

Dated: November 7, 2019        By:      */s/ Scott Alan Burroughs*
                                        Scott Alan Burroughs, Esq.
                                        Trevor W. Barrett, Esq.
                                        DONIGER / BURROUGHS
                                        Attorneys for Plaintiff